IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| DIANE M. KENT, | |
| | * |
| Plaintiff, | |
| | *      Civil Action No.: RDB 05-2593 |
| v. | |
| | * |
| MARYLAND TRANSPORTATION | |
| AUTHORITY, *et al.*, | * |
| | |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This employment discrimination action arises out of a two-count Complaint filed by

Plaintiff Diane Kent ("Plaintiff") against her former employer, the Maryland Transportation

Authority, and former supervisors, Lieutenant Dana Whitt and Aurora Bullock (collectively

"Defendants").  Plaintiff alleges that the Defendants retaliated against her and discriminated

against her on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et. seq.*, and 42 U.S.C. §§ 1981 and 1985.[1]

Pending before this Court is the Defendants' Motion for Summary Judgment.[2]  The parties'

submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md.

---

[1] Plaintiff's Complaint, which she originally filed *pro se*, mentions only 42 U.S.C. §§ 1981 and 1985.  (Compl. ¶¶ 1, 22.)  See *infra* Part I for a discussion of why Plaintiff's claims will be analyzed under Title VII as well.

[2] Portions of Defendants' motion seek dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  However, because Defendants have introduced evidence for this Court's review, the whole motion must be treated as a motion for summary judgment.  Rule 12(b) ("If, on a motion asserting the defense numbered (6) . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment")*; Talbot v. U.S. Foodservice, Inc.*, 191 F. Supp. 2d 637, 639 (D. Md. 2002).

2004).  For reasons stated below, Defendants' Motion for Summary Judgment is GRANTED.

BACKGROUND

The facts are viewed in a light most favorable to the Plaintiff as the nonmoving party.

Plaintiff Diane Kent ("Kent") began working for the Maryland Transportation Authority

("MdTA") in January of 1986 as a Police Communications Operator ("PCO") I.  Because of a

series of job title changes, she served as a PCO I, PCO II, Telecommunications Operator I and

MdTA Telecommunicator II.  Her most recent job title was Telecommunicator II ("TCO II").

Her duties consisted of monitoring police stop transmissions and the daily radio log, monitoring

carbon monoxide levels and disabled vehicles at major tunnels in Baltimore, opening and closing

the tunnels, and answering telephone calls.

In 1997, Kent sought but did not receive certain training opportunities.[3]  Her supervisor

at the time was Aurora Bullock ("Bullock").  In April of 1997, Kent, who is African-American,

applied for a position at the Baltimore-Washington International ("BWI") Airport.  A Caucasian

individual was chosen for the position instead.  Kent filed a charge with the Equal Employment

Opportunity Commission ("EEOC") and received a right to sue letter in 1998.

On November 5, 2002, Kent filed a lawsuit in this Court against the MdTA and four

individuals employed by the MdTA, including Bullock[4], regarding her failure to receive the BWI

Airport position.  The parties settled the case on April 16, 2003.  Under the terms of the

---

[3] Apparently, other employees also requested the same training and were not given the opportunity.  (*See* Kent Dep. 11:5-14.)  In addition, Kent asked to be taught certain computer functions, but there were no classes and she was unable to get individual instruction.  (*Id*. at 12:1-20.)

[4] It is unclear from the parties' submissions what role Bullock played in the decisionmaking process with respect to the BWI position.

2

settlement agreement, Kent would be able to choose a new position within the MdTA subject to the employer's discretion, she would no longer be supervised by Aurora Bullock, and all reprimands and disciplinary notices would be removed from her personnel record.  On April 17, 2003, Judge J. Frederick Motz of this Court issued an order of dismissal without prejudice and allowed the parties sixty days to reopen.[5]  The parties did not move to reopen the case, so it was closed permanently on October 26, 2004.  Subsequently, the parties failed to execute the settlement agreement, but Kent was reassigned to the Port at Key Bridge, where she was no longer supervised by Bullock.

MdTA employees receive a performance evaluation at the end of each work year consisting of numeric scores for eight categories.  Kent appealed each evaluation she received from 1999 to 2002, and each time her score was increased.  Her initial scores ranged from 9 to 27 out of a possible 32, and her scores after appeal ranged from 19-29.  Bullock prepared the evaluations for the 1999 and 2002 years.

In October of 2003, Lieutenant Dana Whitt ("Lt. Whitt") assumed the position of Commander of the Communications Unit and became Kent's supervisor.  On October 31, 2003, Kent notified Lt. Whitt that she wanted to attend an instructor training course in order to be eligible for a promotion, but it is undisputed that she had not completed one of the prerequisites for the class.  (*See* Kent Dep. 82:13-19.)  Accordingly, she was not permitted to attend the course.

On January 28, 2004, Kent received a performance evaluations from Lt. Whitt for the

_____

[5] *Kent v. Maryland Transportation Authority, et al.*, Civil Action No. JFM-02-3612 (Apr. 17, 2003).

2003 work year.  She received a score of 2 ("meets standards") in four categories, a score of 3 ("very good") in four categories, and a score of 4 ("excellent") in one category for a total of 21 points.  (Defs.' Mem. Supp. Summ. J. Ex. M.)  The written comments indicated that Kent had two disciplinary actions and one unauthorized absence.

On March 18, 2004, Kent filed an EEOC charge of discrimination with the Maryland Commission on Human Relations alleging that the MdTA retaliated against her for filing a lawsuit against it in November 2002.  She ultimately received a right to sue letter on June 14, 2005.

On January 24, 2005, Kent received a performance evaluation from Lt. Whitt for the 2004 work year.  She received a score of 0 ("unacceptable") in three categories and a score of 1 ("marginal") in five categories, for a total of 5 points.  (*Id*. at Ex. R.)  The accompanying comments indicated that Kent had received many disciplinary actions and counseling letters for abandoning her post, undependability, and unacceptable behavior.

In the spring of 2005, the MdTA terminated Kent's employment as a result of the following sequence of events.  In 1987, Kent was convicted of attempting to drive while intoxicated and her driver's license was revoked.  She informed her supervisor at the time, Major Howard Otto, Jr. ("Major Otto") of the incident and the loss of her license.  Because her job description at the time did not require that she possess a valid driver's license and she was not authorized to drive state vehicles, Major Otto had no need to follow up.  He was subsequently transferred to a different position and no longer supervised Kent.  In 1989, Kent's driving privilege was reinstated but she never obtained a new license.  Her husband and son alternated driving her to work, and several coworkers were aware that she did not have a driver's license.

4

Every two years, the MdTA provides its employees a copy of the agency's "General Rules for Drivers of Vehicles While on State Business" and employees are required to fill out a form verifying receipt of the policies.  The form includes a space for an employee to fill in her driver's license class and number.  On November 11, 2002, Kent falsely stated on one of these forms that she had a Class C license.  When Lt. Whitt took over as Commander of the Communications Unit in 2003, she required that all employees under her supervision fill out an updated information form, and Kent once again falsely stated on hers that she had a Class C driver's license.  Thus, Lt. Whitt, based upon the Kent's misrepresentations, believed that Kent had a valid driver's license until June of 2004.

On June 8, 2004, for the first time since she began working for the MdTA, Kent was asked to drive a state vehicle during a "Civilian Driving Class."  She was required to attend the class, part of which included operating a state-owned motor vehicle.  At no time did she advise the instructors of the class or her supervisor that she did not have a driver's license.  She returned for another session the following day, June 9, 2004, at which point one of her coworkers informed the course instructors that Kent did not have a driver's license.  When asked directly whether she had a license, Kent responded that she did not.  Thus, the instructors sent her home. They later informed Lt. Whitt of the incident.

By letter dated April 7, 2005, Kent was suspended indefinitely pending charges of termination.  On July 13, 2005, she received Charges for Termination and a Notice of Disqualification from Future Services.  The charges included violations of the Maryland Code of Regulations ("COMAR") 11.02.08.06(B)(6) for failing to inform her supervisor that she did not have a valid driver's license and for failing to inform the class instructors at the Civilian Driving

Class that she did not have a valid driver's license.  She was also charged with violating

COMAR 11.02.08.06(B)(8) for operating a state-owned motor vehicle without a valid driver's

license and COMAR 11.02.08.06(B)(16) for writing that she had a Class C driver's license on

the form acknowledging receipt of the driving policies.[6]

Kent appealed both the Charges of Termination and Notice of Disqualification from

Future Service.  Administrative Law Judge Kimberly Farrell ("A.L.J. Farrell") of the Maryland

Office of Administrative Hearings conducted a hearing on October 14, 2005.  By Proposed

Decision dated November 16, 2005, A.L.J. Farrell concluded that the first charge—failing to

inform her supervisor that she did not have a driver's license—was not a valid reason to

discharge Kent, because Kent had told Major Otto as soon as her license was taken away in

1987.  This was sufficient to put her supervisors on notice and nothing in the record indicated

that Kent "was obliged to take affirmative action to re-notify the agency of the status of her

license."  (Defs.' Mem. Supp. Summ. J. Ex. B. at 10.)  However, A.L.J. Farrell found that the

remaining three charges were justifications for firing Kent, because she violated clear MdTA and

state policies.  Thus, she held that the MdTA met its burden of showing valid grounds for

termination and for disqualifying Kent from future service.

Kent filed exceptions to the Proposed Decision, and a hearing was held before Catherine

Hackman, the MdTA's Secretary's Designee, on December 27, 2005.  She issued an Order on

---

[6] COMAR 11.02.08.06 provides that a "career service" employee—like Kent—can only
be fired for cause.  One such justification is if "[t]he employee has violated any statute,
regulation, executive order, written policy, written directive, or written rule."  COMAR
11.02.08.06(B)(6).  Other justifications include when "[t]he employee has committed an act of
misconduct or a serious breach of discipline" or "[t]he employee has willfully made a false
official statement or report."  COMAR 11.02.08.06(B)(8), (16).

February 28, 2006, upholding A.L.J. Farrell's conclusions as to Kent's termination and

disqualification from future service.  Kent filed a petition for judicial review in the Circuit Court

for Baltimore City on March 23, 2006, but the court upheld Catherine Hackman's Order.  Kent

has appealed the Circuit Court's decision to the Maryland Court of Special Appeals, which has

not yet ruled on the matter.

In the meantime, on June 14, 2005, Kent received a letter from the EEOC regarding her

March 18, 2004 charge.  The EEOC stated that it was "unable to conclude" that the Defendants

violated Title VII based upon its investigation, but that Kent had the right to file a civil lawsuit

within ninety days.  (Compl. Ex. 2.)  She filed the instant action *pro se* on September 16, 2005,

against the MdTA as well as Lt. Whitt and Aurora Bullock in their individual capacities.  Count I

alleges that the Defendants retaliated against her for filing grievances and a lawsuit against them.

Count II alleges that the Defendants discriminated against her on the basis of her race.

Defendants filed a Motion for Summary Judgment as to both Counts on September 15, 2006

(Paper No. 16).

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil

Procedure when there is no genuine issue as to any material fact, and the moving party is plainly

entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, the

Supreme Court explained that, in considering a motion for summary judgment, "the judge's

function is not himself to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial."  477 U.S. 242, 249 (1986).  A dispute about

a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for

7

the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  However, the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.  This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).  Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

<u>DISCUSSION</u>

Plaintiff Diane Kent ("Kent") has brought two claims against Defendants Maryland

8

Transportation Authority ("MdTA"), Lieutenant Dana Whitt ("Lt. Whitt"), and Aurora Bullock

("Bullock").  Count I purports to state a claim for retaliation and Count II purports to state a

claim for racial discrimination.  Defendants have moved for summary judgment on both counts.

## I.      Count I: Retaliation

In Count I of the Complaint, Plaintiff alleges that "all three Defendants have engaged in

acts of retaliation against her solely because of her exercise of her statutory right to be free from

discrimination and harassment."  (Compl. ¶ 16.)  Specifically, she claims she was fired and that

other acts were taken against her "for filing her complaints with the EEOC and in filing a prior

lawsuit against [the MdTA] and its employees."  (*Id*. ¶¶ 16-17.)  As an initial matter, this Court

must determine the legal authority forming the basis of Plaintiff's claim, because Count I does

not cite any statutes in particular.  The Complaint's jurisdictional statement cites both 42 U.S.C.

§ 1981 and  42 U.S.C. § 1985.  (Compl. ¶ 1.)  In addition, the fact that Kent filed an EEOC

charge on the subject of retaliation suggests that she meant to bring her retaliation claim under

Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et. seq.*

Giving the Plaintiff, who filed her Complaint *pro se*, every opportunity to state a claim under the

liberal pleading requirements of the Federal Rules of Civil Procedure, this Court will analyze her

retaliation claim under all three statutory schemes.

### A.      Title VII

Title VII provides that it is unlawful for "an employer to discriminate against any of his

employees . . . because he has opposed any practice made an unlawful employment practice by

this title, or because he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing" involving Title VII violations.  42 U.S.C. § 2000e-3.

Defendants argue that some of the allegations in the Complaint are untimely.  (Defs.'

Mem. Supp. Summ. J. 7-8.)  Under Title VII, any retaliatory events occurring more than 300

days prior to the filing of an EEOC charge in a deferral state, like Maryland,[7] are time-barred.

42 U.S.C. § 2000e-5(e)(1).  Plaintiff filed her EEOC charge with the Maryland Commission on

Human Rights on March 18, 2004.  Thus, any allegedly retaliatory events occurring more than

300 days before that date—*i.e.*, before May 2003—are time-barred, including all events leading

up to Kent's 2002 lawsuit before Judge Motz of this Court.

Defendants also argue that the retaliation claim fails as a matter of law as to Lt. Whitt and

Bullock, because the law does not impose personal liability on individual supervisors or

administrators.  (Defs.' Mem. Supp. Summ. J. 6.)  It is quite clear to this Court that neither

individual is an "employer" within the meaning of Title VII.  *See, e.g.*, *Lissau v. Southern Food

Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998); *Albero v. City of Salisbury*, 422 F. Supp. 2d

549, 556 n.35 (D. Md. 2006).  Thus, the retaliation claim can proceed under Title VII only as to

the MdTA.

Plaintiff has not produced any direct evidence that the MdTA retaliated against her.

Thus, in order to establish a claim, she must satisfy the three-step burden-shifting test first

articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First, she must present

---

[7] Normally, a plaintiff has 180 days after the alleged adverse employment action occurs
to file a charge with the EEOC.  42 U.S.C. § 2000e-5(e)(1).  However, where "the person
aggrieved has initially instituted proceedings with a State or local agency with authority to grant
or seek relief from such practice," the person has 300 days after the allegedly retaliatory event to
file the initial EEOC charge.  *Id.*; *Skipper v. Giant Food, Inc.*, 187 F. Supp. 2d 490, 492 (D. Md.
2002).  In this case, Kent filed her March 18, 2004 EEOC charge with the Maryland Commission
on Human Rights before the case was transferred to the EEOC.  Thus, she had 300 days after an
allegedly retaliatory event to file her EEOC charge.

enough evidence to prove a *prima facie* case of retaliation using the standard recently articulated in *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006).  Second, once she establishes a *prima facie* case, the burden shifts to the Defendants to produce evidence that the adverse employment action was taken "for a legitimate, nondiscriminatory reason."  *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142 (2000) (citing *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  Third, she is "afforded the 'opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  *Id.* (quoting *Burdine*, 450 U.S. at 253).

Plaintiff has failed to satisfy her burden of establishing a *prima facie* case.  To make a *prima facie* showing of retaliation, the employee must show (1) that she engaged in a protected activity, (2) that her employer took an employment action against her that a reasonable employee would have found materially adverse, and (3) that there was a causal connection between the protected activity and the adverse employment action.  *Burlington Northern*, 126 S. Ct. at 2415; *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 298 (4th Cir. 2004) (en banc).  It is undisputed that filing EEOC charges, complaining about racial discrimination, and filing a lawsuit against the MdTA are all protected activities within the meaning of Title VII.  Thus, the first element is satisfied.

According to the test articulated by the Supreme Court in *Burlington Northern*, an employment action must be "materially adverse" to a reasonable employee in order to satisfy the second prong of the *prima facie* case for retaliation.  126 S. Ct. at 2415.  The policy behind this requirement is to prevent employment actions that could "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  *Id.* (citation omitted).  Any reasonable

employee would consider being discharged a materially adverse employment action.  However,

the Complaint also alleges that the Defendants engaged in "acts of retaliation designed to create

a hostile work environment and to force Plaintiff to resign her employment" and that the MdTA

"suspended Plaintiff with the intent of terminating her."  (Compl. ¶¶ 17, 19.)  Two such acts

include poor performance evaluations Kent received from Lt. Whitt on January 28, 2004, and

January 24, 2005, for the 2003 and 2004 work years, respectively.  A reasonable employee

would likely find a poor job evaluation to be a materially adverse employment action, as

evaluations can influence salary and promotion opportunities, as well as cause someone to be

fired.  Finally, although is unclear from Count I exactly which other events constitute "acts of

retaliation," the background section of the Complaint states that Kent was "subjected to

disciplinary actions."  (Compl. ¶ 12.)  This Court presumes that this is a reference to the

disciplinary actions and counseling letters she received for unapproved absences and abandoning

her work.  (*See* Defs.' Mem. Supp. Summ. J. Ex. R.)  Certainly, unjustified disciplinary actions

could be materially adverse to a reasonable employee.  Thus, Kent has satisfied the second

element with respect to her termination, low performance scores, and disciplinary actions.[8]

However, although she has satisfied the first and second elements, Plaintiff has not

presented sufficient evidence to make a *prima facie* showing of the third element.  Although the

Complaint alleges that many adverse employment actions were taken against her in retaliation

---

[8] In her March 18, 2004 EEOC charge, Kent also alleges that she was docked leave time
in retaliation for engaging in protected activities.  (Defs.' Mem. Supp. Summ. J. Ex. A.)
However, in her deposition, she acknowledges that in "2003 or 2004," she was charged half an
hour more than she had requested.  (Kent Dep. 20:18-21:5.)  Under the *Burlington Northern*
standard, a half hour of leave time discrepancy would certainly not deter a reasonable employee
from filing a grievance or charge of discrimination.  *See* 126 S. Ct. at 2415.  Thus, the half hour
of leave time was not an adverse employment action.

for filing EEOC charges and opposing racial discrimination, Plaintiff has not introduced any evidence to support a finding of causation.  One factor commonly cited to prove causation is temporal proximity between the protected activity and the adverse employment action.  In order to establish causation, though, the "temporal proximity must be 'very close.'"  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation omitted); *see Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (finding the thirteen-month interval between the plaintiff's charge of discrimination and termination was "too long to establish causation absent other evidence of retaliation"); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1997) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two.").  In this case, Plaintiff's March 18, 2004 EEOC charge alleges that she was retaliated against for filing a lawsuit against the MdTA in November of 2002.  There is no evidence on the record as to when any of the disciplinary actions took place, so no presumption of causality can be established as to them.  Kent received the low performance evaluations in January 28, 2004, and January 24, 2005, approximately thirteen and twenty-five months later, respectively.  Finally, she was suspended and then terminated in the spring of 2005, almost two and a half years after the 2002 lawsuit was filed.  Because of the extensive time lapse before the first documented allegedly retaliatory event, there can be no inference of causality based on temporal proximity.

Where temporal proximity is not close, though, "courts may look to the intervening period for other evidence of retaliatory animus" which "may be used to establish causation." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (citations omitted).  Unfortunately, the

record is simply devoid of any evidence of retaliatory animus.  As to the evaluations and disciplinary actions, Lt. Whitt gave lower scores to *many* employees besides Kent because her enforcement of rules that had not previously been enforced led to higher numbers of disciplinary actions across the board.  (Whitt Dep. 68:18-69:8.)  There is no indication that the Plaintiff was targeted because of her prior grievances or 2002 lawsuit, none of which involved Lt. Whitt.  In addition, Kent's own conduct in driving without a driver's license led to her suspension and termination.  Major Michael Kirby, Commander of Special Operations Division for the MdTa, stated in his deposition that he "probably would have been within the approval chain" that ultimately decided to discharge Kent, but that he had no knowledge of any lawsuits or grievances she filed.  (Kirby Dep. 30:6-10,  14-20.)  Rather, she was fired because she drove a state-owned vehicle without a driver's license and made a false statement on official documents.  (*Id*. at 30:21-31:2.)  Thus, Kent has failed to present any evidence that the adverse employment actions were taken against her in retaliation for her prior involvement in protected activities.

In conclusion, Plaintiff has not presented sufficient evidence to create a genuine issue of material fact on her retaliation claim under Title VII, and Defendants are entitled to judgment as a matter of law.

### B.       42 U.S.C. § 1981

Plaintiff's retaliation claim cannot survive summary judgment when analyzed under 42 U.S.C. § 1981 for the same reasons it failed under a Title VII analysis.  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is

enjoyed by white citizens. . . ."  Where a plaintiff alleges that she was retaliated against for protesting racial discrimination in the workplace, "the burden-shifting scheme of *McDonnell Douglas Corp. v. Green* and its progeny" applies.  *Hawkins v. PepsiCo, Inc*., 203 F.3d 274, 278 (4th Cir. 2000) (citations omitted); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) ("[T]he elements required to establish a prima facie case are the same under Title VII and Section 1981.").  Because Plaintiff has failed to create a genuine issue of material fact with respect to a retaliation claim under Title VII,[9] therefore, her section 1981 claim for retaliation must also fail.

C.      **42 U.S.C. § 1985**

Under 42 U.S.C. § 1985, two or more persons may not "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws."  42 U.S.C. § 1985(3).  It is well-established that to prove a conspiracy under section 1985, a plaintiff must establish "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy."  *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995); *Olukayode v. Baltimore County*, 450 F. Supp. 2d 610, 618 (D. Md. 2006) (quoting *Simmons*, 47 F.3d at 1376).  Plaintiff has not introduced sufficient evidence to create a genuine issue of material fact as to the elements of a civil conspiracy claim for retaliation.

In particular, Plaintiff cannot succeed on her section 1985 claim because Title VII affords

---

[9] *See supra* Part I.A.

15

the appropriate remedy for a retaliation claim.  With respect to the third element of a section

1985 claim, the "right" that Plaintiff alleges the Defendants interfered with was the right to take

part in the EEOC process and file a grievance against discriminatory employment practices.

(Compl. ¶ 19.)  As noted above, retaliating against an employee for engaging in a protected

activity is an unlawful employment practice under Title VII.  Thus, the employee's remedy

logically lies in Title VII, not 42 U.S.C. § 1985.  The Supreme Court has held, therefore, that

"deprivation of a right created by Title VII cannot be the basis for a cause of action under §

1985(3)."  *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979); *see also*

*Walker v. City of Salisbury*, 170 F. Supp. 2d 541**,** 548-49 (D. Md. 2001).  Thus, a claim for

retaliation is best addressed by Title VII.

In sum, Plaintiff has failed to introduce sufficient evidence to create a genuine issue of

material fact as to her retaliation claim and Defendants are entitled to judgment as a matter of

law.  Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Count I.

## II.      Count II: Racial Discrimination

Count II purports to state a claim for racial discrimination.  Although Count II cites 42

U.S.C. § 1985 as the legal basis for the discrimination claim, for the reasons stated *supra* in Part

I, this Court will analyze Kent's claim under the same three statutory schemes as Count I: Title

VII,  42 U.S.C. § 1981, and  42 U.S.C. § 1985.

### A.      Title VII

First, Defendants argue that Plaintiff is barred from bringing a claim for race

discrimination under Title VII because she failed to exhaust her administrative remedies.  (Defs.'

Mem. Supp. Summ. J. 8.)  It is well-established that "[b]efore a plaintiff has standing to file suit

under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC. The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (citing *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)).

In Kent's March 18, 2004 EEOC Charge, she only checked the box for discrimination based on retaliation, not race.  (Defs.' Mem. Supp. Summ. J. Ex. A.)  In addition, in the narrative portion, Kent claims that she was "treated to unfair terms and conditions of employment including negative marks and comments in [her] evaluation, uncorrected leave errors, a written counseling and denial of training" because she filed an EEOC charge against the MdTA in November of 2002.  (*Id*.)  Nowhere in her EEOC Charge did she mention discrimination based on race.  Accordingly, Plaintiff has failed to exhaust her administrative remedies under Title VII with respect to her racial discrimination claim.

### B.      42 U.S.C. § 1981

As to the MdTA, the Fourth Circuit Court of Appeals has held that "when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'"  *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (quoting *Jett v. Dallas Indep. Sch. Dist*., 491 U.S. 701, 733 (1989)).  Because Plaintiff has not brought a claim under 42 U.S.C. § 1983, the MdTA is entitled to summary judgment as to Count II.

Because Kent sued Lt. Whitt and Bullock in their individual capacities, they, unlike the MdTA, can be subject to suit under section 1981, which provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as

> is enjoyed by white citizens, and shall be subject to like punishment,
> pains, penalties, taxes, licenses, and exactions of every kind, and to
> no other.

The statute further defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id*. § 1981(b).  Employment discrimination claims brought under 42 U.S.C. § 1981 have the same elements as Title VII claims.  *Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998) (citing *Gairola v. Va. Dep't of Gen. Servs*., 753 F.2d 1281, 1285 (4th Cir. 1985)).  Thus, just as individual supervisors are not liable under Title VII, *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998), they "also cannot be liable under § 1981 unless 'they intentionally cause [an employer] to infringe the rights secured by section 1981.'"  *Luy v. Baltimore Police Dep't*, 326 F. Supp. 2d 682, 688 (D. Md. 2004) (internal quotation marks omitted) (alteration in original) (quoting *Carson v. Giant Food, Inc*., 187 F. Supp. 2d 462, 483 (D. Md. 2002)).  A plaintiff can establish such a discriminatory intent either "(1) through direct evidence of discriminatory animus, or (2) through the application of the burden-shifting analyses employed in *McDonnell Douglas*. . . ."  *Frank v. England*, 313 F. Supp. 2d 532, 537 (D. Md. 2004).[10]  As Plaintiff has not produced any direct evidence of racial animus, this Court must apply the *McDonnell Douglas* test.

In order to satisfy her initial burden of making a *prima facie* case of discrimination, Kent must introduce evidence that "(1) [s]he is a member of a protected class; (2) h[er] job performance was satisfactory; (3) [s]he suffered an adverse employment action; and (4) similarly

---

[10] See *supra* Part I.A. for a description of the *McDonnell Douglas* burden-shifting paradigm.

situated employees outside h[er] protected class were treated more favorably." *Luy*, 326 F.

Supp. 2d at 688 (citing *Frank*, 313 F. Supp. 2d at 538).  Kent has clearly satisfied the first

element, as she is African-American.

The second element, however, is not satisfied.  According to her 2004 job evaluation,

Kent was not performing at a satisfactory level; she received a score of "unacceptable" in three

of the eight categories and "marginal" in the remaining five categories.  (Defs.' Mem. Supp.

Summ. J. Ex. R.)  Written comments prepared by Bullock, her supervisor, state that Kent

received three disciplinary actions and three counseling letters for unauthorized absences,

undependability, and failure to comply with an "authority directive."  (*Id*.)  The score on the

2004 evaluation is markedly lower than previous years, indicating that Kent's performance was

not "satisfactory."  (*See id.* at Exs. M-Q.)  Although Plaintiff counters that she received the lower

score in retaliation for her previous EEO activity, she offers no evidence that she was in fact

performing in a satisfactory manner.  Thus, there is simply no evidence for a reasonable jury to

conclude that Plaintiff was performing her job in a satisfactory manner and she has failed to meet

the second element.

Even if she were able to show that she was performing her job satisfactorily, she has

introduced no evidence that similarly situated employees outside her class were treated more

favorably.  For example, with respect to the evaluations, Kent acknowledged that she "didn't

think anybody was really satisfied [with the evaluations]," that another employee "had a lower

score than the 5 she received on her last evaluation," and that coworkers made comments that the

2003 evaluations were "different" than in previous years.  (Kent Aff. ¶ 3; Kent Dep. 43:10-17,

44:11-45:4.)  Indeed, Lt. Whitt confirmed that many employees' scores were lower beginning in

2003, because when she took over as supervisor, she enforced the "regulations and rules" that "hadn't been enforced in the past" resulting in more disciplinary actions.  (Whitt Dep. 68:18-69:8.)  With respect to general grievances, Kent also said that Lt. Whitt had mentioned that "a lot of people were filing grievances."  (Kent Dep. 46: 2-15.)  Thus, by Plaintiff's own words, there was an atmosphere of dissatisfaction among MdTA employees.  This actually discredits her argument that she was singled out because of her race.  Finally, with respect to the alleged denial of an instructor training opportunity, Kent even acknowledged in her deposition that she had not completed one of the prerequisites necessary to take the course.  (*Id.* at 82:13-19.)

Kent has presented no evidence that other employees were treated more favorably than she was.  In fact, there is simply no evidence in the record that race had any part in the Defendants' actions.[11]  Thus, Plaintiff has failed to satisfy her burden of making a *prima facie* showing of race-based discrimination against the two individual Defendants under 42 U.S.C. § 1981.

### C.      42 U.S.C. § 1985

In Count II of the Complaint, Plaintiff alleges that "all of the Defendants have engaged in a pattern and practice of unlawful discrimination on the basis of race by denying Plaintiff promotions, training and pay increases and emoluments in violation of 42 U.S.C., Section 1985."  (Compl. ¶ 22.)  As noted above, the elements of a civil conspiracy claim under 42 U.S.C. § 1985 include: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-

---

[11] In her answer to one of Defendants' interrogatories, Kent says that a white coworker received a higher score despite needing "regular help."  (Defs.' Mem. Supp. Summ. J. Ex. S.) However, this allegation has not been substantiated, and Lt. Whitt's statements in her deposition suggest that an employee's discipline record played more of a role in the evaluation scores than his or her job skills or performance.  (*See* Whitt Dep. 68:18-69:8.)

based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons*, 47 F.3d at 1376; *Olukayode*, 450 F. Supp. 2d at 618 (quoting *Simmons*, 47 F.3d at 1376).

In order to establish the existence of a conspiracy, the plaintiff must "show an agreement or a 'meeting of the minds' by defendants to violate [her] constitutional rights." *Simmons*, 47 F.3d at 1377. The Fourth Circuit has noted that "we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id*. Thus, Plaintiff has a "weighty burden to establish a civil rights conspiracy," and, although direct evidence of a meeting of the minds is not necessary, she "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citations omitted); *Marshall v. Odom*, 156 F. Supp. 2d 525, 532 (D. Md. 2001) (citing *Hinkle*, 81 F.2d at 421). In this case, Kent has failed to introduce evidence to create a genuine issue of material fact as to the existence of a "meeting of the minds." There is simply no concrete evidence—direct or circumstantial—on the record to indicate that the MdTA, Lt. Whitt, and Bullock shared an agreement or a "conspiratorial objective" to discriminate against Kent on the basis of her race.

In conclusion, Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact as to her race discrimination claim and Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to

Count II.

CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.  A separate Order and Judgment follows.

/s/_____
Richard D. Bennett
United States District Judge

Date:  May 1, 2007